IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Willie R. Travis, | : | CASES CONSOLIDATED |
|     Appellant | : | |
| | : | |
| v. | : | Nos. 338 & 339 C.D. 2025 |
| | : | Submitted: June 16, 2026 |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing | : | |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER       FILED: July 16, 2026

In this consolidated matter, Willie R. Travis (Travis), pro se, appeals two Orders of the Court of Common Pleas of Dauphin County (trial court), both exited February 11, 2025. In the Orders, the trial court denied and dismissed Travis's statutory appeals from a 12-month suspension and an 18-month suspension of his driving privilege imposed by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (Department). The Department imposed both suspensions pursuant to Section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547, commonly known as the Implied Consent Law, because Travis refused to submit to chemical testing following separate arrests for driving under the influence (DUI) of alcohol in violation of Section 3802 of the Vehicle Code, 75 Pa.C.S. § 3802. On appeal, Travis argues that the trial court erred because the suspensions are void

as the product of an unconstitutional administrative regime and because of the Department's defiance of judicial orders. After careful review, the Court affirms the Orders of the trial court because the suspensions pass constitutional muster and the Department has not defied any relevant judicial order.

## I.    BACKGROUND

This matter arises from two license suspensions imposed by the Department after Travis refused to submit to chemical blood testing following two separate arrests for DUI. By letter dated May 24, 2024, the Department notified Travis that his driving privilege would be suspended for 12 months, effective June 28, 2024, pursuant to Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1)(i), because he refused to submit to a chemical blood test following his arrest for DUI on May 11, 2024. Travis appealed the 12-month suspension to the trial court, and the appeal was docketed at 2024-CV-04158. The trial court subsequently scheduled a hearing and stayed the 12-month suspension pending the outcome of the appeal.

On July 10, 2024, the Department mailed a second notice to Travis stating that his driving privilege would be suspended for 18 months, effective August 14, 2024, pursuant to Section 1547(b)(1)(ii) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1)(ii), because he refused to submit to a chemical blood test following his arrest for DUI on May 31, 2024. Travis appealed the 18-month suspension to the trial court, and the appeal was docketed at 2024-CV-05060. The trial court then scheduled a hearing and stayed the 18-month suspension pending the outcome of the appeal.

On February 11, 2025, the trial court held a joint hearing on the appeals. During the hearing, the Department called Officer Steven Gray of the Harrisburg City Police and Trooper George Martin of the Pennsylvania State Police to testify to the events that triggered the 12-month suspension and 18-month suspension,

2

respectively. To begin, Officer Gray testified that he arrested Travis for DUI on May 11, 2024, and subsequently read to Travis verbatim the Department's DL-26B Form.[1] Officer Gray further testified that Travis refused Officer Gray's request for a chemical blood test. Next, Trooper Martin testified that he arrested Travis for DUI on May 31, 2024. Like Officer Gray, Trooper Martin testified that after arresting Travis, he read to Travis verbatim the DL-26B Form. Trooper Martin then testified that Travis refused Trooper Martin's request for a chemical blood test.

After the hearing, the trial court entered the Orders denying and dismissing Travis's statutory appeals and reinstating the suspensions. Travis separately appealed the Orders to this Court and filed motions to stay the reinstatement of the suspensions in the trial court.[2] After the trial court did not consider the motions because the motions did not comply with the Dauphin County Local Rules of Court,

---

[1] In relevant part, the DL-26B Form states as follows:

1. You are under arrest for [DUI] of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.

2. I am requesting that you submit to a chemical test of blood.

3. If you refuse to submit to a blood test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of [DUI], your operating privilege will be suspended for up to 18 months. If your operating privilege is suspended for refusing chemical testing, you will have to pay a restoration fee of up to $2,000 in order to have your operating privilege restored.

4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

(Original Record, 338 C.D. 2025, Item No. R1.)

[2] This Court *sua sponte* consolidated the separate appeals on June 26, 2025.

3

Travis filed amended motions to stay the reinstatement of his suspensions in the trial court. Citing the trial court's failure to rule on the amended motions and grant the requested relief, Travis filed applications to stay the trial court's Orders in this Court. By Order dated July 16, 2025, this Court denied the applications. *Travis v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., Nos. 338 & 339 C.D. 2025, filed July 16, 2025) (memorandum and order).

Travis also filed concise statements of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Pa.R.A.P. 1925(b), as directed by the trial court. In an opinion pursuant to Rule 1925(a), the trial court dismissed each issue Travis raised in his statements of errors as meritless. While not raised as an error, the trial court further opined that Travis's appeals should be denied because the Department satisfied its burden to sustain the suspensions under Section 1547 of the Vehicle Code.[3]

With briefing before this Court complete, this matter is ripe for disposition.[4]

---

[3] To sustain a suspension of a licensee's driving privileges under Section 1547 of the Vehicle Code, the Department must establish

> that the licensee: (1) was arrested for [DUI] by a police officer who had reasonable grounds to believe the licensee was under the influence of alcohol or a controlled substance; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that the refusal would result in a license suspension.

*Farnack v. Dep't of Transp., Bureau of Driver Licensing*, 29 A.3d 44, 48 (Pa. Cmwlth. 2011). Travis does not challenge on appeal that the Department met its burden to sustain the suspensions.

[4] The Court's "review is limited to determining whether the trial court's findings are supported by substantial evidence, errors of law have been committed, and the trial court's determinations demonstrate an abuse of discretion." *Palitti v. Dep't of Transp., Bureau of Driver Licensing*, 331 A.3d 96, 105 n.11 (Pa. Cmwlth. 2024).

4

## II.  DISCUSSION

On appeal, Travis presents three principal issues:  (1) whether the Department "engage[d] in unconstitutional lawmaking and act[ed] *ultra vires* by creating the substantive legal warnings in the DL-26B [F]orm without authority from the General Assembly, thereby rendering the [F]orm and any subsequent suspension void from its inception;" (2) whether "the administrative regime created by the DL-26B [F]orm violate[s] the Pennsylvania and [United States] Constitutions by coercing citizens into surrendering their right to be free from warrantless blood searches, making any resulting license suspension an unconstitutional penalty for the assertion of a right;" and (3) whether the Department's "documented pattern of defying multiple, lawful court orders renders the underlying administrative suspensions invalid from their inception."  (Travis's Brief (Br.) at III.)

### A.  The DL-26B Form

We begin with Travis's argument that the Department exceeded its authority under the Implied Consent Law by creating the DL-26B Form.  Travis contends that Section 1547 of the Vehicle Code does not authorize the Department "to create a mandatory script of substantive legal warnings" but "gives the duty to warn a motorist of the consequences of a refusal directly to the 'police officer' on the scene." (*Id.* at 1.)  Rather than merely implementing the law, Travis asserts that the DL-26B Form is an *ultra vires* act of substantive lawmaking and violates separation of powers principles.  Thus, Travis argues that the DL-26B Form and the administrative actions based on it are void.

This Court has explained that "it is the Implied Consent Law, and not the DL-26B Form, that imposes both the obligation on the police to provide a motorist with the [i]mplied [c]onsent [w]arnings and the consequences for a motorist who

5

refuses to submit to chemical testing after receiving the warnings." *Scott v. Dep't of Transp., Bureau of Driver Licensing*, 342 A.3d 773, 780-81 (Pa. Cmwlth. 2025). In relevant part, Section 1547(a) of the Vehicle Code provides that

> [a]ny person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of [S]ection . . . 3802 [of the Vehicle Code] (relating to driving under influence of alcohol or controlled substance) . . . .

75 Pa.C.S. § 1547(a). In turn, Section 1547(b)(1) of the Vehicle Code mandates that "[i]f any person placed under arrest for a violation of [S]ection 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the [D]epartment shall suspend the operating privilege of the person" for a statutorily defined period of time. 75 Pa.C.S. § 1547(b)(1). Section 1547(b)(2)(i) of the Vehicle Code places on "the police officer" the duty to inform the person arrested for a violation of Section 3802 of the Vehicle Code that, among other things, their "operating privilege will be suspended upon refusal to submit to chemical testing." 75 Pa.C.S. § 1547(b)(2)(i). "Once a police officer provides the implied consent warnings to a motorist, the officer has done all that is legally required to ensure the motorist is fully advised of the consequences of [their] failure to submit to chemical testing." *Park v. Dep't of Transp., Bureau of Driver Licensing*, 178 A.3d 274, 281 (Pa. Cmwlth. 2018).

To aid police officers in their duty to inform motorists of the implied consent warnings and ensure that police officers comply with the Implied Consent Law, the

6

Department created the DL-26B Form.[5] *Scott*, 342 A.3d at 781. Simply, the DL-26B Form serves as "a script for police to follow to ensure the administration of proper/adequate warnings." *Id.* As this Court has held, "a reading of the DL-26[B] Form sufficiently apprises the driver, either hearing or reading it, that if [the driver] refuses to submit to the chemical test, [their] operating privileges will be suspended." *Park*, 178 A.3d at 281. Indeed, it is well settled that "the warnings contained in the DL-26B Form satisfy, as a matter of law, the minimum requirements under Vehicle Code Section 1547(b)." *Carter v. Dep't of Transp., Bureau of Driver Licensing*, 332 A.3d 890, 897 (Pa. Cmwlth. 2025) (citing cases). Nevertheless, it remains the Implied Consent Law—not the DL-26B Form—that imposes the duty on police officers to ensure "that motorists receive certain warnings regarding the consequences of refusal of requested chemical testing." *Scott*, 342 A.3d at 780-81. In other words, the DL-26B Form is "not a requirement of the Implied Consent Law without which a license suspension for a refusal to submit to requested chemical

---

[5] "The warnings in the DL-26B Form are often referred to as the '*O'Connell* warnings' or the 'Implied Consent Warnings.'" *Carter v. Dep't of Transp., Bureau of Driver Licensing*, 332 A.3d 890, 895 (Pa. Cmwlth. 2025). Our Supreme Court first pronounced the *O'Connell* warnings in *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873 (Pa. 1989), in which that Court

> held that where a police request for chemical testing is preceded by *Miranda* [*v. Arizona*, 384 U.S. 436 (1966)] warnings, the police have an affirmative duty to not only inform the arrestee that his driving privilege will be suspended for one year if he refuses chemical testing, but also that the arrestee does not have the right to consult with an attorney or anyone else prior to deciding whether to perform chemical testing.

*Carter*, 332 A.3d at 895. Thereafter, the Department included the *O'Connell* warnings on the DL-26B Form, ensuring that police officers "inform a motorist who is arrested for driving under the influence that his *Miranda* rights do not apply to chemical testing because the request to submit to chemical testing is a civil proceeding and not a criminal proceeding and the right to counsel only applies in criminal proceedings." *Id.* at 896-97.

7

testing cannot proceed," but rather "acts as one piece of evidence to be employed, if needed, to illustrate police compliance with the requirements of the Implied Consent Law." *Id.* at 781-82; *see also Cash v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 1069 C.D. 2024, filed Feb. 24, 2026), slip op. at 13 (explaining that the DL-26B Form submitted into evidence buttressed the police officer's testimony as to the implied consent warnings).[6]

Therefore, contrary to Travis's arguments, the DL-26B Form does not constitute substantive lawmaking as the Form does not create substantive legal requirements. *See Scott*, 342 A.3d at 780-81. Rather, the DL-26B Form is a script used to aid police officers in their duties and ensure compliance with the requirements of the Implied Consent Law. *Id.* Here, Travis does not challenge that Officer Gray and Trooper Martin, respectively, fulfilled their duty under the Implied Consent Law to inform Travis of the implied consent warnings by reading to him the DL-26B Form after his arrests for DUI on May 11, 2024, and May 31, 2024. Thus, the Court cannot conclude that Travis's suspensions are void on this basis.

### B. Constitutional Violations

Next, Travis argues that the license suspensions are void because the "administrative regime" established by the Department via the DL-26B Form is facially unconstitutional as it violates (1) the Fourth Amendment to the United States Constitution, U.S. CONST. amend. IV, and article I, section 8 of the Pennsylvania Constitution, PA. CONST. art. I, § 8, and (2) the Fifth Amendment to the United States Constitution, U.S. CONST. amend. V. (Travis's Br. at 1.)

---

[6] Unreported panel decisions of this Court may be cited for their persuasive value pursuant to Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

When a constitutional challenge is facial in nature, "[l]egislation affecting driving privileges is evaluated under the rational basis test." *Ferguson v. Dep't of Transp., Bureau of Driver Licensing*, 340 A.3d 278, 285 (Pa. 2025). "The statute, like all duly enacted legislation, enjoys a strong presumption of validity, and it will only be invalidated if it violates the Constitution clearly, palpably, and plainly." *Id.* "A statute is facially unconstitutional only where no set of circumstances exist[s] under which the statute would be valid." *Commonwealth v. Hunte*, 337 A.3d 483, 497 (Pa. 2025) (alteration in original) (quoting *Commonwealth v. Pownall*, 278 A.3d 885, 904 (Pa. 2022)). In this evaluation, courts "do not purport to second-guess the wisdom or soundness of the public policy choices made by the General Assembly" but "only ask whether a constitutional violation has occurred." *Ferguson*, 340 A.3d at 285; *see also Program Admin. Servs., Inc. v. Dauphin Cnty. Gen. Auth.*, 928 A.2d 1013, 1017-18 (Pa. 2007) ("[I]t is the Legislature's chief function to set public policy and the courts' role to enforce that policy, subject to constitutional limitations.").

Here, for the reasons below, Travis has not shown that the Implied Consent Law of this Commonwealth is clearly, palpably, and plainly unconstitutional. Therefore, the Court cannot conclude that the license suspensions in this matter are invalid on this basis.

### 1. Warrantless Blood Search

Travis first argues the Department's "administrative regime" "is designed to coerce consent to a warrantless blood search" in violation of the Fourth Amendment of the U.S. Constitution and article I, section 8 of the Pennsylvania Constitution as established by *Birchfield v. North Dakota*, 579 U.S. 438 (2016), and *Commonwealth v. Myers*, 164 A.3d 1162 (Pa. 2017) (plurality), respectively. (Travis's Br. at 1.) Travis also contends that the "regime" ignores the statutory right to "multiple testing

9

options" under Section 1547 of the Vehicle Code by "offering only the most intrusive test and treating any inquiry about alternatives as a refusal." (*Id.*) Further, Travis claims that the "regime" violates Section 1547(b.3) of the Vehicle Code, which "codifie[d] the warrant requirement for blood tests." (Travis's Reply Br. at 5.) Finally, Travis asserts that "[t]his arbitrary and irrational process" violates "substantive and procedural due process." (Travis's Br. at 1.) We disagree.

The Fourth Amendment to the U.S. Constitution and article I, section 8 of the Pennsylvania Constitution prohibit "unreasonable searches and seizures." U.S. CONST. amend. IV; PA. CONST. art. I, § 8.[7] Under both constitutions, "searches conducted in the absence of a search warrant are *per se* unreasonable, unless they satisfy one of the recognized exceptions to the warrant requirement." *Hunte*, 337 A.3d at 498. "One such exception exists when a person consents to the search," which "must be 'voluntarily given, and not the result of duress or coercion, express or implied.'" *Id.* (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 248-49 (1973)).

---

[7] The Fourth Amendment to the U.S. Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. In turn, article I, section 8 of the Pennsylvania Constitution provides:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

PA. CONST. art. I, § 8.

It is well settled that, facially, warrantless chemical blood testing under the Implied Consent Law does not constitute an unreasonable search because any search is consensual.[8] *Bechtel v. Dep't of Transp., Bureau of Driver Licensing*, 352 A.3d 1159, 1166 (Pa. Cmwlth. 2026). A plurality of the Pennsylvania Supreme Court has explained that the Implied Consent Law "authorize[s] a police officer to request a motorist's submission to a chemical test, at which point the motorist must choose either (a) to comply with the test or (b) to refuse and accept the consequences that accompany refusal." *Myers*, 164 A.3d at 1174. The Supreme Court further opined:

> Our implied consent statute is not an *ipso facto* authorization to conduct a chemical test. Rather, it is the statutory mechanism by which a police officer may seek to obtain voluntary consent, unique to this context in that the law prescribes consequences for the failure to provide such consent.[] The statute contemplates a police officer's *request* that the arrestee submit to chemical testing, and, **if the arrestee declines the request, "the testing shall not be conducted**." 75 Pa.C.S. § 1547(b)(1). The concept of implied consent does not allow for a chemical test if the arrestee refuses to provide actual consent in response to the police officer's request. If, however, the arrestee complies with the police officer's request, then the arrestee has provided actual consent.

*Id.* at 1176-77 (bold emphasis added). Thus, because the arrestee can decline a blood test, "there is no unreasonable search" as "any blood test would be consensual." *Bechtel*, 325 A.3d at 1166. And because "there is no unreasonable search," there is "no search and seizure violation under either the Fourth Amendment to the U.S. Constitution or article I, section 8[] of the Pennsylvania Constitution." *Id.*

Although a motorist's choice under the Implied Consent Law "may well be a difficult one, [] this alone does not invalidate the 'implied consent' created by the statute." *Commonwealth v. Bell*, 211 A.3d 761, 773 (Pa. 2019). "[T]he pertinent

---

[8] The drawing of blood for a chemical test constitutes a search. *Birchfield*, 579 U.S. at 455.

11

question in determining the constitutionality of a statute demanding this particular choice is whether the consequence for refusing a warrantless blood test undermines the inference that the motorist implicitly consented to it, and suggests instead that the 'search' was coerced." *Id.* Travis argues that the Implied Consent Law unconstitutionally coerces motorists to consent to warrantless blood searches. However, the courts of this Commonwealth have rejected this argument, concluding the evidentiary and civil consequences for refusing to submit to chemical testing under the Implied Consent Law do not unconstitutionally coerce motorists into consenting to a warrantless blood test.[9] *See, e.g.*, *id.* at 775-76 (upholding the constitutionality of the "evidentiary consequences" imposed by Implied Consent Law); *Patane v. Dept' of Transp., Bureau of Driver Licensing*, 192 A.3d 335, 349-50 (Pa. Cmwlth. 2018) (en banc) (upholding the constitutionality of civil license suspensions imposed by the Implied Consent Law).

The U.S. Supreme Court's decision in *Birchfield* and the Pennsylvania Supreme Court's decision in *Myers* do not mandate a contrary conclusion, as Travis argues. First, *Birchfield* does not apply in this civil license suspension case. As this Court has held, *Birchfield* "does not apply in a civil license suspension proceeding" because it only "prohibits a state from **criminally** penalizing a motorist for refusing to submit to a warrantless request for a blood test." *Renfroe v. Dep't of Transp., Bureau of Driver Licensing*, 179 A.3d 644, 650 (Pa. Cmwlth. 2018) (emphasis added) (citing *Boseman v. Dep't of Transp., Bureau of Driver Licensing*, 157 A.3d 10 (Pa. Cmwlth. 2017)). Indeed, the U.S. Supreme Court limited its holding in *Birchfield* to criminal penalties, explaining that "prior opinions have referred

---

[9] Indeed, the Implied Consent Law did not coerce Travis to consent to warrantless blood searches in these cases; rather, Travis refused the requests for blood testing following both of his arrests for DUI.

12

approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply" and that "nothing we say here should be read to cast doubt on them." *Birchfield*, 579 U.S. at 477; *see also Marchese v. Dep't of Transp., Bureau of Driver Licensing*, 169 A.3d 733, 739 (Pa. Cmwlth. 2017) (explaining that "the U.S. Supreme Court clearly indicated nothing in *Birchfield* questions the constitutionality of state implied consent laws imposing only civil sanctions"). Accordingly, *Birchfield* does not apply to the cases before the Court, because they involve **civil** license suspensions, not criminal penalties, for refusing to submit to chemical blood testing.

Similarly, *Myers* does not support Travis's position. In *Myers*, a plurality of the Pennsylvania Supreme Court held that Section 1547 of the Vehicle Code does not authorize a warrantless blood test of unconscious motorists arrested for DUI. 164 A.3d at 1172. Our Supreme Court reasoned that the Implied Consent Law provides "an absolute right to refuse chemical testing" and that arrestees in an unconscious state are prevented "from making a knowing and conscious choice as to whether to exercise that right." *Id.* Because Myers was unconscious and could not make a knowing and conscious decision on whether to consent to or refuse a police officer's request for a chemical test, the Supreme Court concluded that the warrantless draw of Myers's blood violated his "right to be free from unreasonable searches and seizures." *Id.* at 1181-82. In the cases at bar, however, Travis was conscious when asked to submit to a chemical blood test and **refused** to consent; thus, these cases are distinguishable from *Myers*.

The Court further rejects Travis's argument that Section 1547(b.3) of the Vehicle Code requires a warrant before law enforcement may obtain a chemical blood test from motorists arrested for DUI. Section 1547(b.3) of the Vehicle Code

13

provides that "[n]othing in this section shall be construed as limiting the ability of law enforcement to obtain chemical testing pursuant to a valid search warrant, court order or any other basis permissible by the Constitution of the United States and the Constitution of Pennsylvania." 75 Pa.C.S. § 1547(b.3). In other words, Section 1547(b.3) does not require a warrant before law enforcement may obtain a chemical test but states that law enforcement is not restricted by the Implied Consent Law from obtaining a chemical test through a valid search warrant. For example, if a motorist exercises his right under the Implied Consent Law to refuse chemical testing, Section 1547(b.3) clarifies that law enforcement may still obtain chemical testing pursuant to a valid search warrant. Therefore, Section 1547(b.3) of the Vehicle Code does not require a valid search warrant before law enforcement may obtain a chemical test pursuant to the Implied Consent Law.

Next, while motorists placed under arrest for DUI have a choice between submitting to or refusing a requested chemical test, Travis is incorrect that motorists have a statutory right to choose which chemical test to take. *See Nardone v. Dep't of Transp., Bureau of Driver Licensing*, 130 A.3d 738, 748 (Pa. 2015). Section 1547(a) of the Vehicle Code provides that motorists "consent to one or more chemical tests of breath or blood" when a police officer has reasonable grounds to arrest the motorist for DUI. 75 Pa.C.S. § 1547(a). As the Pennsylvania Supreme Court has explained,

> [i]n exchange for receiving operating privileges, motorists give their implicit consent to take all chemical tests reasonably requested of them during a DUI stop. Police request chemical testing,[] and the motorist must submit to that request on pain of license suspension. Nothing in this construct refers to a right in the motorist to choose [the] test, even if it were reasonably practicable to honor such a request.

14

*Nardone*, 130 A.3d at 748. In other words, "[b]y implicitly consenting to any and all chemical tests in Section 1547(a), a motorist arrested for DUI is subject to any and all tests, and he effectively relinquishes any right to choose his preferred test over an officer's." *Id.* at 745. Therefore, there is "no statutory right to request alternative testing once" the motorist is "confronted with an official request to submit to a blood test." *Id.* at 748; *see also Kostyk v. Dep't of Transp., Bureau of Driver Licensing*, 570 A.2d 644, 647 (Pa. Cmwlth. 1990) (holding that motorists have "no constitutional right to refuse a test and moreover [] no constitutional right to request a specific test").

Lastly, the Court disagrees with Travis's contention that the Implied Consent Law violates due process. "A claim that state action violates substantive due process invokes a means-end inquiry pursuant to which the reviewing court examines the relationship between the law and the governmental interest the law seeks to achieve." *Ferguson*, 340 A.3d at 285. Because driving is a privilege, not a fundamental right, "[l]egislation affecting driving privileges is evaluated under the rational basis test." *Id.* When applying rational basis review, courts "evaluate whether the statute bears a real and substantial relation to the ends sought to be achieved, and is neither patently oppressive nor unnecessary to those ends." *Id.*

Here, the Implied Consent Law satisfies rational basis review. The Implied Consent Law seeks "to reduce the number of motorists driving under the influence" by "providing an effective means of quickly denying intoxicated motorists the use of the Commonwealth's highways." *Occhibone v. Dep't of Transp., Bureau of Driver Licensing*, 669 A.2d 326, 328 (Pa. 1995). In other words, it is designed "to protect the public" from drunk drivers. *Kostyk*, 570 A.2d at 647. And "the Commonwealth has a compelling interest in protecting its citizens from the dangers

15

posed by drunk drivers." *Occhibone*, 669 A.2d at 328. Thus, this Court has held that the Implied Consent Law "is a proper exercise of the Commonwealth's police power by the General Assembly." *Kostyk*, 570 A.2d at 647. Accordingly, the Implied Consent Law "bears a real and substantial relation to the ends sought to be achieved, and is neither patently oppressive nor unnecessary to those ends," and does not violate substantive due process.[10] *Ferguson*, 340 A.3d at 285.

For the foregoing reasons, the Court cannot conclude that the Implied Consent Law clearly, palpably, and plainly violates either the Fourth Amendment to the U.S. Constitution or article I, section 8 of the Pennsylvania Constitution.

## 2. The Right Against Self-Incrimination

Next, citing *Commonwealth v. Stauffenberg*, 318 A.3d 399 (Pa. Super. 2024),[11] Travis argues that the Implied Consent Law violates the right against self-

---

[10] As for procedural due process, this Court recently explained that

> a licensee who is arrested for DUI and asked to submit to a chemical test of blood has a statutory right to refuse. *See* 75 Pa.C.S. § 1547(b)(1). Upon notification of the refusal by a police officer, [the Department] will impose an operating privilege suspension in accordance with Section 1547(b)(1) of the Vehicle Code and notify the licensee of the suspension. Thereafter, in accordance with Section 1550(a) of the Vehicle Code, 75 Pa.C.S. § 1550(a) (relating to judicial review), a licensee can file a timely statutory appeal from the suspension. After the licensee makes proper service of the appeal petition "upon [the Department's] legal office," *id.*, the "filing and service of a petition for appeal from a suspension or revocation shall operate as a supersedeas until final determination of the matter by the court vested with the jurisdiction of such appeals." Section 1550(b)(1)(i) of the Vehicle Code, 75 Pa.C.S. § 1550(b)(1)(i). Accordingly, a licensee is afforded due process after he elects to refuse the requested chemical testing of blood or breath in accordance with Section 1547(b)(1) of the Vehicle Code.

*Bechtel*, 352 A.3d at 1166. Here, the record does not reflect that Travis was denied procedural due process after he refused the requested chemical testing of his blood following his arrests for DUI.

[11] Generally, Superior Court decisions are not binding on, and only offer persuasive value to, this Court. *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

incrimination under the Fifth Amendment to the U.S. Constitution. Travis contends that the DL-26B Form unconstitutionally "coerces a driver into an action—or inaction (silence)—that is then used as the sole evidence to impose a punitive sanction." (Travis's Br. at 1.) Travis thus asserts that the Implied Consent Law violates the right against self-incrimination because it "is designed to compel a response that is, by its very nature, incriminating in the administrative context." (*Id.*)

To start, Travis is incorrect to the extent he argues that the Implied Consent Law violates the right against self-incrimination by imposing license suspensions on motorists who have refused requests for chemical testing after an arrest for DUI. The right against self-incrimination derives from the Fifth Amendment to the U.S. Constitution, which relevantly provides that "[n]o person . . . shall be compelled in any **criminal case** to be a witness against himself." U.S. CONST. amend. V (emphasis added). "The privilege protects a person from being compelled to testify against himself or herself in both criminal and civil proceedings, formal or informal, where the answers to questions might incriminate the person in future **criminal proceedings**." *Commonwealth v. Lutz*, 618 A.2d 1254, 1255 (Pa. Cmwlth. 1992) (emphasis added). In other words, a violation of the Fifth Amendment "occurs only if one has been compelled to be a witness against himself in a **criminal case**." *Chavez v. Martinez*, 538 U.S. 760, 770 (2003) (emphasis added). However, "license suspensions, unlike the DUI proceeding, are **civil**, not criminal, proceedings." *Marchese*, 169 A.3d at 738 (emphasis added). Accordingly, to the extent that a motorist's refusal to submit to a requested chemical test is used to suspend the motorist's license in a **civil** proceeding, the motorist is not protected by the right against self-incrimination.

Moreover, it is well settled that a motorist's refusal to submit to a chemical blood test that has been lawfully requested "is not protected by the privilege against self-incrimination" because it is not a compelled act. *South Dakota v. Neville*, 459 U.S. 553, 564 (1983). In *Neville*, the U.S. Supreme Court considered whether the admission into evidence of a defendant's refusal to submit to a blood-alcohol test violated the Fifth Amendment right against self-incrimination. The High Court held that it did not, reasoning that implied consent laws that offer suspects the choice of either submitting to or refusing a blood test do not compel suspects to refuse the test. Although recognizing that "the choice to submit or refuse to take a blood-alcohol test will not be an easy or pleasant one for a suspect to make," the Supreme Court explained that "the values behind the Fifth Amendment are not hindered when the state offers a suspect the choice of submitting to the blood-alcohol test or having his refusal used against him." *Id.* at 563-64. Here, therefore, because Pennsylvania's Implied Consent Law offers motorists a choice between consenting to or refusing requested chemical tests, *Myers*, 164 A.3d at 1174, "a refusal to take a blood-alcohol test, after a police officer has lawfully requested it, is not an act coerced by the officer, and thus is not protected by the privilege against self-incrimination," *Neville*, 459 U.S. at 564; *see also Hunte*, 337 A.3d at 500 n.73 ("*Neville* held that the admission into evidence of a defendant's refusal to submit to a BAC test did not violate the defendant's Fifth Amendment right against self-incrimination.").

Travis's reliance on *Stauffenberg* is misplaced. In *Stauffenberg*, a defendant charged with DUI argued that the evidence against him should be suppressed in part because the DL-26B Form unconstitutionally requested a "signature of operator." 318 A.3d at 402. The municipal court agreed, suppressing all evidence that derived from the use of the DL-26B Form because the Form was unconstitutional as it

18

"require[d] a suspect to sign as the 'operator' of the vehicle without having received *Miranda* [*v. Arizona*, 384 U.S. 436 (1966)] warnings." *Id.* at 403. On appeal, a common pleas court concluded that "[t]he term 'operator' in the 'Signature of Operator' . . . results in violations of a defendant's rights against self-incrimination . . . , where the defendant's operation of a vehicle is an element of a charged offense that the Commonwealth must prove at trial." *Id.* at 404 (citation omitted). However, the common pleas court disagreed with suppressing all of the evidence; rather, the court concluded that "the appropriate remedy" is to suppress only the "defendant's signature on the [F]orm as proof of the defendant's operation of a vehicle" and redact "of Operator" from "Signature of Operator." *Id.* On further appeal, the Superior Court affirmed, reasoning that even if "the [F]orm violates a defendant's constitutional rights against self-incrimination since it does not require *Miranda* warnings prior to a defendant signing the [F]orm indicating he/she was the 'operator,' . . . at most . . . the Commonwealth was precluded from using [the defendant's] signature as the 'operator' against him at trial." *Id.* at 408-09.

*Stauffenberg* is distinguishable from the cases at bar. The cases before the Court are **civil** license suspension proceedings whereas *Stauffenberg* involved a **criminal** DUI proceeding. *See Marchese*, 169 A.3d at 738. Further, unlike in *Stauffenberg*, **Travis did not sign** the DL-26B Forms indicating that he was the operator of the vehicle. (*See* Original Record (O.R.), 338 C.D. 2025, Item No. R1; O.R., 339 C.D. 2025, Item No. 31.) Moreover, *Stauffenberg* did not hold that the defendant's refusal to submit to chemical testing violated the right against self-incrimination; rather, that case involved whether **the term "operator"** on the DL-26B Form, which constituted an element of the crime, violated the Fifth Amendment

19

in a criminal case. Therefore, *Stauffenberg* does not support Travis's contention that the Implied Consent Law facially violates the right against self-incrimination.

For these reasons, the Court cannot conclude that the Implied Consent Law clearly, palpably, and plainly violates the Fifth Amendment to the U.S. Constitution.

### C. Defiance of Orders

Finally, Travis contends that the suspensions in the instant cases are invalid because the Department has defied two supersedeas orders issued by the trial court that stayed suspensions of his driving privilege in cases docketed in the trial court at 2025-CV-04937 and 2025-CV-06660.[12] Travis asserts that he "has only one driving privilege, and the purpose of the automatic supersedeas under [Section 1550(b)(1)(i) of the Vehicle Code,] 75 Pa.C.S. § 1550(b)(1)(i)[,] is to protect that privilege." (Travis's Reply Br. at 5.) Relying on *Department of Transportation v. Meehan* (C.C.P. Phila., No. 3782, filed March 6, 2008),[13] Travis thus argues that the Department's defiance of the two supersedeas orders renders the suspensions in the cases at bar invalid. We disagree.

The supersedeas orders issued by the trial court at docket numbers **2025-CV-04937** and **2025-CV-06660** are **not** related to the appeals before this Court, which involve the suspensions at docket numbers **2024-CV-04158** and **2024-CV-05060**. Indeed, those supersedeas orders stayed different suspensions than the suspensions

---

[12] Although not part of the record, the Court takes judicial notice of the dockets at *Travis v. Department of Transportation, Bureau of Driver Licensing* (C.C.P. Dauphin Cnty., No. 2025-CV-04937), and *Travis v. Department of Transportation, Bureau of Driver Licensing* (C.C.P. Dauphin Cnty., No. 2025-CV-06660). This Court "may take judicial notice of the dockets of other courts of the Commonwealth." *Johnson v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 703 C.D. 2022, filed Sept. 26, 2023), slip op. at 1 n.1 (citation omitted); *see also* Pennsylvania Rule of Evidence 201(b), Pa.R.E. 201(b).

[13] The Court of Common Pleas of Philadelphia County issued the opinion in *Meehan* pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), Pa.R.A.P. 1925(a).

20

involved in the appeals before this Court. Thus, those supersedeas orders have **no bearing** on the cases before the Court.

This is consistent with Section 1550(b) of the Vehicle Code, pursuant to which the trial court issued the supersedeas orders at 2025-CV-04937 and 2025-CV-06660. By its terms, Section 1550(b)(1)(i) of the Vehicle Code applies only to the suspension order under appeal. *See* 75 Pa.C.S. § 1550(b)(1)(i) ("[F]iling and service of a petition for appeal **from a suspension** or revocation shall operate as a supersedeas until final determination **of the matter** by the court vested with the jurisdiction of **such appeals**." (emphasis added)); *see also Babin v. City of Lancaster*, 557 A.2d 464, 474 (Pa. Cmwlth. 1989) ("[T]he grant of a supersedeas pending appeal postpones the enforcement of **the order** or regulation complained of." (italics removed) (emphasis added)). Therefore, those supersedeas orders only prohibit the Department from enforcing the suspensions involved in **those appeals**—not the suspensions at issue here. *See* 75 Pa.C.S. § 1550(b)(1)(i).

Travis's reliance on *Meehan* is misplaced. In *Meehan*, the Court of Common Pleas of Philadelphia County rescinded a suspension of a motorist's license in part because the Department reimposed the suspension after this Court stayed the suspension during the pendency of the appeal.[14] The common pleas court reasoned that the Department "had an obligation, under [this Court's] order, not to suspend Mr. Meehan's driver's license." *Meehan*, slip op. at 10. It was not until this Court rendered its decision on appeal, the common pleas court explained, that the Department regained the authority to reimpose **the stayed suspension**. Because the Department reimposed the suspension when it lacked the authority to do so, the

---

[14] Section 1550(b)(iii) of the Vehicle Code provides that "[f]urther review by another court," such as a further appeal to this Court, "shall not operate as a supersedeas unless a court of competent jurisdiction determines otherwise." 75 Pa.C.S. § 1550(b)(iii).

21

common pleas court thus concluded that the reimposed suspension was void and lacked legal effect.

However, *Meehan* is factually different than the situation here. The suspensions that are stayed pursuant to the trial court's orders at 2025-CV-04937 and 2025-CV-06660 are different suspensions than the ones on appeal in this case, having occurred subsequently to the violations in this case. In the matters on appeal in the cases at bar, this Court **denied Travis's request for a stay** of the suspensions pending his appeals to this Court. *Travis v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., Nos. 338 & 339 C.D. 2025, filed July 16, 2025) (memorandum and order). Thus, contrary to Travis's assertions, the Department had the authority to reimpose the suspensions during the pendency of these appeals.

Accordingly, the Court cannot conclude that the suspensions in this matter are invalid based on two supersedeas orders issued by the trial court in separate, unrelated cases.

## III. CONCLUSION

For the foregoing reasons, the Court affirms the Orders of the trial court.

_____
RENÉE COHN JUBELIRER, President Judge

22

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Willie R. Travis, | : | CASES CONSOLIDATED |
| Appellant | : | |
| | : | |
| v. | : | Nos. 338 & 339 C.D. 2025 |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing | : | |

## **O R D E R**

**NOW**, July 16, 2026, the Orders of the Court of Common Pleas of Dauphin County, entered in the above-captioned matters, are **AFFIRMED**.

_____
RENÉE COHN JUBELIRER, President Judge

23